All right, our final case this morning is United States v. Williams, number 255011. Ms. Alam, we'll start with you. Thank you, your honors. Lina Alam for the United States. In this case, the district court made two fundamental errors that require reversal. First, it misapprehended this court's precedent, allowing magistrates to base their determinations of probable cause on reasonable common sense inferences from the evidence contained in the search warrant in a search warrant affidavit. Second, it misread Gonzalez, leading it to ignore critical evidence that supported the minimally sufficient nexus that would have allowed application of the good faith exception. I'll address first the failure to allow the magistrate's inferences. The district court cited Bigelow, but failed to address the four factors that Bigelow, the four non-exhaustive factors that Bigelow identifies that may be used to assess whether nexus exists in a given case. First, before you go into that, I want to make sure we're talking about what the legal standard is here, right? We're talking about a substantial nexus. Is that fair? That's what Bigelow says. Well, it depends on which issue we're talking about. So talking about the first issue where we're talking about your first argument for reversible error. Yes. Not good faith. Yes. Whether there's a substantial basis to find a nexus or a reasonable probability that's connecting the criminal activity with the place to be searched. Okay. And so under that first element, that Bigelow and Mora and other cases counsel that the court should, the magistrate judge should consider the type of crime at issue. The extent, if any, of the suspect's opportunity for concealment. The nature of the evidence sought and any reasonable inferences as to where a criminal might or would keep the evidence being sought. So here, the crux of the magistrate judge's nexus finding, the connection between Mr. Williams' criminal activity and his home was his Jeep. Which on September 26th, one of the local police officers who had arrested Mr. Williams for obstruction noticed that that Jeep contained an emergency light bar, a radio, and a public address system. Those officers also discovered that the glove compartment of his Jeep contained two FBI badges, fake FBI badges, and handcuffs. All of these facts were in paragraphs nine and 10 of the search warrant affidavit. Paragraph 10 also noted that the badges were seized and booked into evidence. Nothing, so from those facts, a magistrate could draw a reasonable common sense inference that the emergency light bar, the PA system, the CB radio, and the handcuffs were not seized or booked into evidence. In fact, as it happened, when the search was later run, those items remained in the car or in the Jeep. The next critical fact in the affidavit was that when, after the local police arrested him for obstruction, the FBI got involved and began an investigation into 18 USC 912, impersonating a federal officer. Their interests in the investigation were very different than the local police who were, who charged him with obstruction. So in doing so, they noted that other items suggesting that Mr. Williams was impersonating a federal officer had been noticed in the car, and they sought to search his home for those items. But before they did that, they conducted surveillance. And in conducting surveillance at that house that the Bixby police report had indicated was his home address, they saw the very same Jeep with the very same license plate. Counsel, can I just, I have a sort of first principle question. What is the criminal activity that we're looking to connect to the home? Is it using what the district court said, which was using the fake badge in the pickup line? Is that it? Or is it something that developed later? I think you've identified one of the problems with the district court's analysis, which is that the district court was improperly focused on that one moment on the 26th of September, whereas the investigation, and typically a federal investigation, is broader than that. Now, the crime that they were investigating Mr. Williams for was impersonation of a federal officer. And as the district court observed, that occurred certainly on the 26th of September. But the scope of the investigation encompassed more than that. Whether Mr. Williams had continued to or had previously impersonated a police officer, some of the other items in his car or in his Jeep suggested that he might have engaged in other conduct impersonating a police officer, for instance, traffic stops or anything like that. So the fact that he definitely or engaged in conduct that might have satisfied the statute on the 26th did not prevent the FBI into investigating his conduct as a whole. So based on that, the FBI agents, after noticing the same Jeep that had contained those items of evidence on the 26th, parked in front of Mr. Williams' house, up against the garage on the 1st of October, sought a federal search warrant and were granted a federal search warrant. And that... For the house, right? For the house and any vehicles on the cartilage. So that would have included the Jeep. So in order to endorse your argument that there was a reasonable inference the magistrate could have made that the district court erred in rejecting, there has to be something in the affidavit that would have told the magistrate why the house was likely to have the that were in the car. There has to be some factual basis from which that inference could be made. And I don't see it. So maybe you can help me see it. Okay. I think what Bigelow stands for is that the facts, the inference that the things might be in the house is an inference the magistrate can draw from the facts that are presented. The facts here that are presented are that Mr. Williams was confronted for, after presenting fake FBI credentials on the 26th, had other items that were related to impersonating an officer in his Jeep. And later that same Jeep was parked at his house. A magistrate could make a reasonable common sense inference that a smart person, having been arrested after showing a fake FBI badge, might have removed other evidence that he was engaging. But the officer, he had that in the car when the officers arrested him and they didn't seize it. And I don't think that you argued concealment to the district court, did you? We argued that the magistrate could draw inferences that would have, that directly addressed the items seen in the car, the car parked at the house, and the house itself. The word concealment wasn't said, but certainly the Bigelow factors and the types of inferences that a magistrate may draw were absolutely argued to the district court. And in fact, the district court specifically rejected that argument saying, if the Fourth Amendment only required a list of items to be seized, leaving a judge to fill in the necessary connections or inferences to be drawn from the facts to support the search, the Fourth Amendment's probable cause would be rendered meaningless. That's simply inconsistent with Bigelow. So is it your position that the magistrate judge was supposed to draw the inference that the listed items were of the type that would be found in a house? Not in every case, but in this case, under these circumstances, the magistrate could reasonably have inferred after having been arrested for impersonating a police officer, or, yeah, well, having been arrested for obstruction after impersonating an FBI agent, that a defendant who then had his car at his house might have had the incentive to take other evidence out of that Jeep. And so the magistrate judge could reasonably have inferred that the items that were seen in his on the 26th had been moved into his house or were still in his Jeep on the cartilage on October 1st when the FBI agents observed it and when the warrant was obtained. Can I just jump in and ask you whether you would agree that in a given case, and maybe it's this case, that there's a fine line between the magistrate drawing a reasonable inference on the one hand and filling in a gap in the affidavit that the defiant really should have filled in themselves. Isn't that really the crux of the first issue is determining whether this inference you're talking about truly is a reasonable one, or whether it's really a matter of can the magistrate step in and fix a deficient affidavit? Really, this is precisely the type of connection that Bigelow speaks of, right? In order to find nexus between evidence that a defendant may have been involved in criminal activity and the defendant's house, there must be some additional evidence linking the criminal activity in the evidence. It may be based on an affiant saying, I think this stuff is here because criminals of this type often store these things in their house. I don't think that would have been an appropriate statement here because there's no criminal people who impersonate FBI agents often keep their things in their house. There was no such statement and that inference might not be a general one. It's not like a drug crime or a gun crime where agents have enough experience with them to make that inferential statement. But certainly based on the facts of this case, and that's precisely what Bigelow speaks to, this magistrate could have drawn this inference. And Bigelow specifically permits an inference like this one drawn by a magistrate judge to provide the additional evidence of nexus required for probable cause. And significantly, the amount of deference due to the magistrate's determination here is something that the district court did not seem to grant. And part of that is because the district court was improperly focused on whether the government could prove the crime just based on the initial incident itself, whether they needed to go into the house to get additional inference. Could you just clarify one thing? At one point in your briefing, it says the FBI sought to search the home for evidence like the items the local police had seen but not seized. So were they looking for items like the ones in the Jeep or were they looking for items that were in the Jeep? The items listed in attachment B match up largely with the items that were seen in the Jeep, but also other items like that. And that's why I use the word like in that context. So other FBI gear, body armor, things like that. But also it specifically lists the handcuffs. It specifically lists an emergency light bar and police radios. Okay, thank you for the clarification. If I may, I'd like to reserve the remainder of my time. Thank you, counsel. Ms. Barton. May it please the court. Bryn Barton on behalf of Mr. Williams, the appellee. I'd like to start talking about this issue of waiver. It briefly came up in your questioning of the government. The government says that it made the same argument and that it did talk about this potential opportunity for concealment because it talked about the Jeep. But if you go through both the written response to the motion to suppress and the extensive hearing transcript, it's not just that the phrase opportunity for concealment did not come up. It has more to do with the fact that the government was not focused on the Jeep or specifically on the items within the Jeep and its argument before the district court. If you go through that transcript, it only one time does it address the items within the Jeep outside of the factual basis. And it says on page 142 of the appendix that the items seen in the Jeep at the elementary school that the light bar and the handcuffs obviously suggest an ongoing crime. This was part of the government's argument in front of the district court that the reasons that we are connecting this crime to this home is the nature of the crime. Isn't there any reasonable inference that that these items that were noticed by local law enforcement in the Jeep are the types of items that someone who impersonates a federal officer might use? It does not say that within the affidavit. I understand that. I'm asking you if it supports a reasonable inference. They did lay out the facts. They did state that those things were in the Jeep and not seized by local law enforcement. I mean, couldn't the magistrate judge draw a reasonable inference that those were the types of items that someone impersonating an officer might possess? I think he could make or the district judge could make an inference like that. The problem here is that's not the only inference that is needed to be made. Just to make a quick correction, I realize that there's this inference that the items were still in the Jeep when they were seen or they were still in the Jeep when whoever picked up the Jeep from the tow yard brought it back to this residence. The affidavit does not say what happened to any of these other items. It says that it grabbed and booked the two badges and it mentions the handcuffs in that statement, but it does not talk about any of these other items. We also know that Mr. Williams was arrested that day. We don't know when he was released from custody. We don't know if this vehicle was registered in his name. We don't know if he picked it up and drove it back to that house. So even if that's one reasonable inference that the magistrate could make, it's this long string of inferences that is our problem. Even to get to the point that the inference is maybe he moved these items that were in the Jeep into his home, we have to come way too far to even get to that inference through all these other inferences. I'm asking the clarification question again. There's reference in your briefing to the Jeep being seized on September 26th. Have I got that right? Yes. Okay. And there's also reference to an inventory search. So what happened to the items in the Jeep on September 26th? Were they just left there and when the Jeep left the authorities they were still there? Do we know that? What exactly were you trying to say in your brief about that? What I was trying to say I think is reflected very well in your question. We don't know what happened to those items. The affidavit does not say if those items were removed, if they were not removed. And all we have is this one passing reference where an officer says that he believes that he saw these items and then we know there was an inventory search and in that search they grabbed the badges. But we don't know anything else about what happened to these items following September 26th or even following the tow. So does that mean in your view that the absence of that makes any inference that they were moved from the Jeep to the house unreasonable? Yes. I do believe it's so. And I think that would be unreasonable on its own because the affidavit doesn't say anything about that. But in light of the fact that there are all these other inferences that need to be made it certainly makes it unreasonable. Can I ask you a question about how we should be thinking about these different but kind of related legal standards here? For the first issue, the requirement is it's for a substantial nexus. And for good faith it's a minimally sufficient nexus. And I take it from your argument, there's no nexus no matter what you call it. But could you address how we should be thinking about the minimally sufficient nexus for the good faith? And what is your best argument for why the good faith exception doesn't apply here? I think the district court handled this very well in its opinion and order. And that is that, as you stated, there is no nexus. That is our argument. But it also is any reasonable officer in this situation who would take this affidavit would look and read that on September 26th. And then it would have 11 pages about computer crimes. And then it tells you what to seize. And there are little bits and details that the government is trying to pick and fit in to try to make these inferences work. But just reading the affidavit, I think, in a common sense way, and as you would, it says this is not supposed to be legal professionals who may understand all of these different factors and things we can consider, but they are supposed to understand reasonably the basics of the law. And if you're reading this affidavit, I think a reasonable officer would question why are we searching the home of someone where he held up a badge one time in front of an elementary school? And that's why I think good faith doesn't apply. Well, because the crime wasn't holding up a badge, the crime's impersonating a federal officer. And so when you're looking for evidence of that crime, it is more than flashing a badge, isn't it? There can be lots of other indicia that somebody is doing that. Your Honor, I think in this situation, not necessarily. Because just owning a badge or just owning, let's even get into the light bars, that does not mean that you're impersonating a federal officer. There has to be some- You wouldn't agree that those items could be evidence of someone, if he said, I wasn't impersonating an officer, and you trot out all of these additional items, that that wouldn't be indicia of him maybe impersonating an officer? Okay, I understand your question a little better. I do think it would be reasonable to say that. However, that still does not get us into his home. And the government's argument, at least on appeal, comes down to these specific items could have been moved from the car into the home. But there's this greater scheme of that doesn't- There's no connection in the affidavit that is actually getting us into the home. And these items were seen in the vehicle. We don't know what happened to them. And then the vehicle is seen in the driveway. But there is no connection to Mr. Williams' home. What do you think about on the good faith exception, the argument that the government's made that basically tying him and the Jeep to that home was enough, that on your precedent, that there wasn't even that connection? Because I think the Jeep itself is not one of these items of impersonation. It is the items within the Jeep that we are concerned about. And the government has not, or the affidavit, did not connect the items to the home. And you can make these inferences about it was in the time. But as Judge Russell found in his opinion, based on the affidavit, the inference is that he kept these items in his vehicle, not in his home. Did the affiant say anything about how, in his experience, people who impersonate federal officers keep this kind of stuff around in their homes, in their experience? Is there anything like that that would make that connection based on the affiant's experience? There is nothing like that. And when he goes through his experience, he doesn't list any particular experience in false impersonation crimes or false impersonation crimes. His experience is mostly in, I believe it was drug trafficking, street gang type situations. And he never connects why his opinion and experience would provide probable cause that there might be items like this in the home. And he never says that. If that had been in the affidavit, would it have made a dispositive difference here? I don't know if it would be dispositive. I think it would be a very important factor. I think there would still need to be additional evidence because this is not a crime like drug trafficking. I think there have been some pretty specific carve-outs, and this court has called them special class of crimes, that kind of inherently, if there's probable cause to believe that this crime has been committed, then there's probable cause to get into the home and believe there's evidence of that crime in the home. This is not within one of those special classes, and the government has presented no case law or argument other than in front of the district court that that is why there is a nexus in this case. Let me ask you this. On the Exhibit B, the list of things to be seized, there are things like jackets, clothing, belts, firearms. Would you agree with me that the magistrate judge could have drawn an inference that those are the type of things that might be found in someone's home? No, I don't believe so, because I think this is not the type of crime that gets us to that point. The fact that he allegedly had these badges and the items in his car does not inherently say that he has these items in his home. We don't know if he has them or not, but those are all probative of this crime if he does have them, don't you think? If he has police paraphernalia, jackets, shirts, caps, those types of things in his house? Not necessarily, your honor. I think because this was at least the way it was described in the affidavit, what we have is one instance in which he held up this badge, and they saw their items in his car, but the government's pursuit of this, well, what if he's pulling people over? I think you're missing my question. So, I guess what I'm asking is, if there were a prosecution for him impersonating an officer by flashing his badge, and the government wanted to trot out additional evidence, and they said, and he had an FBI jacket and an FBI t-shirt and an FBI cap in his house, and he had an FBI issue belt, and he had, you know, a firearm resembling those that FBI agents carry, would those items be probative of the crime that he committed? I think they could be, but I also think the fact that there may be items that are probative of that doesn't mean that the government gets to go search his home without... Not asking you to admit that. I'm not asking for any ultimate admissions here. I'm just trying to figure out what inferences might be reasonable. And so, my next question on that front would be, I mean, if we were looking for t-shirts, caps, jackets, belts, guns, I mean, is it unreasonable for a magistrate judge to infer that those might be the types of items that someone would keep in their house? Sure, and if I may... I mean, I'm not saying that she made that or that the magistrate judge made that inference. I'm just probing it. And I would like to now connect this to the case Mora, because I think in that case, we had probable cause to believe that there was alien smuggling, and then they came back to the home, and overall, that affidavit failed because they did not connect the probable cause for the alien smuggling to the home. In fairness, though, there was another issue in that case, and that is that they had, without a warrant, gone into the home and identified certain things that were included in the affidavit, right? Like a gun safe. Yes, but I think... And they would not... And I believe that case that suggested that they wouldn't have been able to get the affidavit without the information that they obtained during the warrantless search. If I remember correctly, I believe they did go through that analysis, but then when they got to the probable cause, they said, even if we pretended like that information wasn't in there, and we only looked at this other information, we still don't find probable cause, and we still don't find the good faith exception applies. And the reason that I brought this case up is because in that case, the court was not concerned with, is it conceivable that evidence of alien smuggling would be in this home? Is it imaginable that evidence of alien smuggling would be in this home? The court said the affidavit did not provide sufficient facts and evidence for a magistrate to reach that conclusion. And I think that's exactly what we have here. This is not, is it conceivable in any worlds that we can imagine that these items might be in his home? It's, does the affidavit that underlines this warrant give us sufficient facts and evidence to do this? And it doesn't in this case. I see my time is up, so unless there are any other questions, I would just ask this court to affirm the district court's ruling. Thank you, counsel. I believe we have some rebuttal time. You're on mute again, I think. I was waiting for the timer to reset. Oh, okay. Sorry. With my, I think, minute and 23 seconds, I'd like to make three points. First, there was a basis for the magistrate to infer that those items remained in the jeep. That is, that in addition to the actual text of the affidavit, the affidavit contained attachment B, specifically listing the items to be searched for, including the items that had been seen in the jeep. So there was a basis for that, the magistrate to make that inference. Second, I'd like to talk about the right case to evaluate the good faith exception in this case. It is not Mora, it is Cotto. The significant, the critical difference between Mora and Cotto is that in Mora, the vehicle driven by the defendant was found behind a Walmart, and in Cotto, the defendant's vehicle was found parked in front of the house to be searched. In Cotto, it wasn't even his house, it was his brother-in-law's house. But the fact that the car was found there after he had had opportunity to conceal items, as opposed to Mora, where the police beat the defendant back to his house. So in Cotto, as here, there was an opportunity for the defendant to move things from the car parked in front of the house to the house, and that provided a basis to support the good faith exception in Cotto and provides that same basis here. Does it matter that in Cotto, the affidavit was approved by a DA? It does not, because as explained in my brief, good faith is an objective standard, and the approval by the DA was irrelevant to the objective good faith of an officer executing a search. I'd like to close, if I can, by noting that Bigelow specifically observes that the strong Fourth Amendment preference for a warrant compels the court to resolve even doubtful or marginal cases by deferring to the magistrate's determination of probable cause. Here, the district court failed to do that. We are here to ask this court to observe that preference and to defer to this magistrate's determination of probable cause. We would ask that you reverse the district court. Thank you. Thank you, counsel. Further questions? Hearing none, I think our time has run out, and we will consider this case submitted. Counsel are excused, and this court will stand in recess. Thank you.